IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DOUGLAS BAKER,

Plaintiff,

vs.

LALA BRANDED PRODUCTS, LLC.,

Defendant.

**8:22CV425**

**MEMORANDUM AND ORDER**

Plaintiff filed a Complaint on December 9, 2022. Filing No. 1. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 5. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff sues his former employer, LALA Branded Products, LLC., ("Defendant) for damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. §§ 2000e to 2000e-17. Plaintiff was employed by Defendant for approximately five years from August 16, 2016, to November 30, 2021, as a Processing Operator in the Processing Department. Plaintiff alleges sexually harassing and racially discriminatory conduct was frequently and openly occurring throughout his employment and "Defendant was remiss in providing adequate anti-harassment education, training, effective disciplinary action, and a zero-tolerance position." Filing No. 1 at 2–3, ¶¶ 10–11.

In April 2020, Plaintiff changed from third shift to first shift and, thereafter, an employee, Fidel Favela ("Favela"), began to sexually harass Plaintiff. Fidela had a

history of "[f]requently and openly displaying aggressive, difficult, and volatile demeanor," "[m]aking disparaging and unlawful comments regarding sex, race, and religion directly and indirectly toward other employees," and "[h]ad repeatedly received verbal reprimands and had multiple interactions with [Human Resources ("HR")]" during the time of Plaintiff's employment. *Id*. at 4, ¶ 15. "[Favela] was able to maintain employment despite an open display of unlawful behavior," and Plaintiff claims Defendant's failure to prevent workplace bullying and harassment and terminate Favela "contributed to a Hostile Work Environment." *Id*., ¶¶ 17–18. Plaintiff alleges he complained multiple times to his immediate supervisor, Justin Brodersen ("Brodersen"), and Brodersen admitted to independently observing "a persistent pattern of mistreatment causing the Plaintiff emotional harm," which he unsuccessfully tried to address through "verbal reprimand[s] to responsible parties." *Id*., ¶¶ 19–20. Plaintiff alleges his reports of harassment to supervisory staff resulted in additional, retaliatory harassment to the Plaintiff, and he was "mocked and humiliated repeatedly for having made complaint." *Id*., ¶ 21.

In May 2021, Plaintiff was verbally sexually harassed by Favela. Immediately afterwards, "Plaintiff began to vent loudly in the locker room," and another employee inquired of Plaintiff as to his wellbeing and reported the employee's concerns regarding Plaintiff to Brodersen. *Id*. at 5, ¶¶ 24–25. Brodersen then approached Plaintiff the following day about the incident, and Plaintiff "made clear and concise complaint of experiencing repeatedly unlawful harassment by Fidel Favela involving sex, race, and religion" to Brodersen. *Id*., ¶ 26. Brodersen asked Plaintiff if Plaintiff wanted to take the complaint to HR, to which Plaintiff hesitated and Brodersen asked Plaintiff "if his

hesitation was in fear of further retaliation." *Id*., ¶ 27. "Plaintiff claims being given an option showed a lack of consideration to the level of difficulty for a male employee to acknowledge being sexually harassed by another male employee," and "he received no reassurance or guidance by Supervisor Justin Brodersen that the Defendant had a zero-tolerance policy toward harassment and that HR would take immediate action to resolve the issue." *Id*., ¶¶ 29–30 (punctuation corrected). It does not appear that Plaintiff's May 2021 complaint was reported to HR at that time. After the May 2021 incident, the frequency and intensity of Favela's "unlawful harassment" increased. *Id*., ¶ 31.

In the beginning of July 2021, Favela "made unwelcome physical sexual contact by massaging the Plaintiff's neck," which was witnessed by one of Plaintiff's co-workers. *Id*., ¶ 32. On July 7, 2021, upon his arrival to work, Plaintiff encountered Favela who proceeded to harass Plaintiff. Plaintiff confronted Favela, and "a verbal altercation took place in front of multiple witnesses." *Id*., ¶ 33. Plaintiff reported the incident to Brodersen and demanded "to take the issue to HR out of fear the possibility of a physical altercation may take place." *Id*., ¶ 34. Brodersen initially discouraged Plaintiff from going to HR after speaking with Favela and stated "the possibility they would both get in trouble." *Id*., ¶ 35. Plaintiff, however, insisted and a meeting with the Senior HR Manager took place on July 8, 2021. Prior to the meeting, Plaintiff provided an e-mail to Defendant outlining the unlawful harassment Plaintiff was subjected to by Favela and a few other employees and explaining how Defendant had failed to utilize its "anti-harassment" policy and failed to implement preventative measures in dealing with issues of harassment. *Id*. at 6, ¶¶ 36–38. Brodersen was present during Plaintiff's

meeting with HR and did not dispute Plaintiff's claims that he reported harassment to Brodersen, including the May 2021 incident, or that Brodersen personally observed "unlawful bullying" of Plaintiff in the workplace. *Id*., ¶¶ 39–40.

Plaintiff alleges the "severe and pervasive nature of harassment that took place resulted in the Plaintiff requesting FMLA [leave] effective 07/12/2021," and Defendant terminated Plaintiff's employment on November 30, 2021, due to lack of a clear return to work date. *Id*. at 7, ¶ 47. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 29, 2021, and the EEOC issued a Notice of Right to Sue Letter on September 12, 2022. *Id*. at 6–7, ¶¶ 44–45; *see also Id*. at 9.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. ANALYSIS

Plaintiff filed his Complaint alleging violations of Title VII, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff's Complaint was filed within 90 days of his receipt of his right-to-sue notice, *see* Filing No. 1 at 9, and, thus, is timely. *See* 42 U.S.C. § 2000e-5(f)(1) (the charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on his charge). However, for the reasons discussed below, Plaintiff's Complaint fails to allege sufficient facts to state a plausible claim for relief under Title VII.

Liberally construed, Plaintiff sues Defendant alleging a hostile work environment claim based on Plaintiff's race and sex under Title VII. "Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (internal quotation marks and citation omitted). To succeed on such a claim under Title VII, Plaintiff must establish that "(1) [he] is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and [his] protected-group status; (4) the harassment affected a term, condition, or privilege of [his] employment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt and effective remedial action." *Id*. at 805-06 (internal quotation marks and citation omitted). *See also* *Linville v. Sears, Roebuck & Co.*, 335 F.3d 822, 823–24 (8th Cir. 2003) (elements of hostile work environment harassment claim based on sex).

"To determine whether the harassment affected a term, condition, or privilege of [Plaintiff's] employment, we must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 922 (8th Cir. 2018) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)) (internal quotation marks and alterations omitted). "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Jackman*,

728 F.3d at 806 (internal quotation marks and citation omitted). "[I]n in order to find that the harassment affected a term, condition or privilege of employment, [the plaintiff] must be able to establish that the conduct was extreme, such that intimidation and ridicule permeated the workplace." *Id*.

Here, with respect to race harassment, Plaintiff generally alleges that "[r]acist comments and slurs [were] made openly" and that "[o]ccupational segregation, resulting in racial division, tension, and open hostility" occurred frequently and openly during his employment with Defendant. Filing No. 1 at 2–3, ¶ 10. Plaintiff also gives as examples of sexual harassment a male employee slapping a female co-worker on the bottom in the presence of a supervisor; a married female employee having an open extra-marital affair with a male co-worker leading to a confrontation at work involving the female employee's husband; employees having known sexual relationships with other co-workers; male employees making sexual comments and mimicking sexual gestures toward female co-workers; subcontracted female janitorial staff being subjected to male employees accessing closed restrooms and urinating in front of her; male employees engaging in illicit conversations detailing same-sex sexual encounters; male employees mimicking or making gestures representing a same-sex sexual act being performed; male and female employees caught in lewd acts or having sex while at work; male employees exposing their genitals to each other while at work; and inappropriate content viewed on the breakroom television, eliciting illicit comments from employees during breaktime. *Id*. As to Plaintiff himself, Plaintiff points to Favela's harassment of Plaintiff, including the verbal sexual harassment incident in May 2021, the early July

2021 incident when Favela massaged Plaintiff's neck, and the July 7, 2021 harassment by Favela which led to the verbal altercation between Plaintiff and Favela.

Plaintiff's vague allegations regarding racial harassment and his allegations of sexual harassment, even when construed liberally, fail to suggest the kind of severe and pervasive conduct required to support a hostile environment claim. *See Bainbridge v. Loffredo Gardens, Inc*., 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks made directly to plaintiff once a month for two years by owner and operators was insufficient to render workplace objectively hostile); *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (reversing denial of summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, if not daily, basis"); *Scusa v. Nestle USA Co.,* 181 F.3d 958, 967 (8th Cir. 1999) (nine incidents of unpleasant conduct and offensive comments, considered "either individually or collectively," were not "severe or pervasive enough so as to alter a term, condition, or privilege of [ ] employment."); *Ways v. City of Lincoln*, 871 F.2d 750, 754–55 (8th Cir. 1989) (upholding finding of hostile work environment where plaintiff identified approximately 50 examples of racial harassment). Plaintiff does not allege with any specificity the nature of the harassment to which he was subjected. At best, the Court can only infer that Plaintiff was subjected to one incident of unwelcome physical contact and comments and treatment he found offensive and unwelcome. However, "merely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment," *Moses*, 894 F.3d at 922–23 (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010)) (internal quotation marks omitted), and "simple

teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," *id*. at 923 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted). As such, Plaintiff has failed to allege a hostile work environment claim upon which relief may be granted.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim under Title VII upon which relief may be granted and is subject to dismissal under 28 U.S.C. § 1915(e)(2). However, on the Court's own motion, Plaintiff will be given 30 days in which to file an amended complaint alleging sufficient facts to state a plausible claim for relief against Defendant under Title VII if such allegations can be truthfully and plausibly alleged. Plaintiff is advised that any amended complaint he files will supersede his original Complaint. If an amended complaint is not filed within 30 days, this action will be dismissed without further notice.

IT IS THEREFORE ORDERED that:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

4. The Clerk of Court is directed to set a pro se case management deadline using the following text: **January 3, 2024**: amended complaint due.

5. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 4th day of December, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge